Commonwealth *v.* Kostan, Appellant.

Argued March 20, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Samuel H. Sarraf,* with him *Herman C. A. Hofacker,* for appellant.

*Jacob E. Kalson,* Assistant District Attorney, with him *Russell H. Adams,* District Attorney, for appellee.

OPINION BY MR. JUSTICE HUGHES, May 22, 1944:

Nicholas Esipovich died from shock and intra-cranial hemorrhage following fractures of the skull. Dora Kostan and Akim Solop were indicted for this murder and in each case the jury returned a verdict of voluntary manslaughter. The evidence disclosed that Akim Solop conducted a saloon in a building owned by Dora Kostan, and she worked as an employee in his saloon. Both de-

fendants were behind the bar when John Sardula claimed he had been short-changed. An argument ensued, in which Nick Esipovich participated on behalf of Sardula. During the argument, Akim Solop and Dora Kostan came from behind the bar and Akim Solop struck Nick Esipovich over the left side of the head, across the ear, with a club the size of a policeman's mace, causing Nick to fall down. Dora Kostan then picked up a beer bottle and struck Nick Esipovich over the right side of the head, breaking the bottle. Then Solop "dragged him out" the rear of the saloon into an alley and placed him on a step at the rear of a building next door to the saloon. When he was being taken from the saloon, a witness, Nick Patak, who saw him, stated he could see blood coming from the mouth of Nick Esipovich. The defendants claim, there being evidence in the case that after the deceased was removed from the saloon he had twice fallen when he attempted to arise and struck his head, the jury should not have been permitted to guess which blow or blows of the four caused the death. The jury definitely found that Dora Kostan and Akim Solop struck the deceased and that he was dragged into the alley and placed on a step where Solop left him. Nick Patak relates the helplessness of Nick Esipovich after Solop left him on the step: "Nick Esipovich. He just want to get up by door frame like that (indicating). He went like that (indicating), and fall on his right side. He fall. I look two or three minutes. He never get up." Another witness, Louise Preschapa, describes this situation: "Q. What did Akim Solop do after that? A. He seated him there, left him there, and went home. Q. Did you watch further, or did you go into your house? A. Well, I stood there a while, a little longer, and I saw when Nicholas Esipovich was trying to get up and then he fell. Q. When he fell, did he fall from a seated position or on his way up? A. He was rising at the time, in the act of rising, and fell." The defendant, Dora Kostan, states: "Then Nick was sitting there, leaning like this

(indicating), and finally he put his two hands on the bricks that support, and began to rise himself. He kept rising higher and higher and he made about two steps when he fell backwards and when he fell on his back he was drunk and he finally turned over on his right side and at that moment I saw Patak running towards him." As outlined in detail by the medical witness, the deceased's skull showed two distinct fractures. From the evidence the jury could properly find that Nick Esipovich had been struck two violent blows by Solop and Kostan in the saloon, was dragged therefrom by Solop, at which time blood was coming from his mouth, and abandoned in a dazed condition. The trial judge charged: "Now, in this case there are two defendants under indictment, and the testimony has been offered to the effect that both of them, with instruments in their hands, struck Nick Esipovich over the head, on May 16, 1942, in Akim Solop's saloon in McKees Rocks. If you find as a fact that the defendants did this, and if you find that they were acting in concert, aiding and abetting each other with a common purpose, and that purpose was the doing of great bodily harm to Nick Esipovich; and, if you find that, as a result of these blows, Nick Esipovich died, then they would both be equally guilty and it would be for you to decide whether they are guilty of second degree murder or guilty of voluntary manslaughter."

The trial judge required of the jury a proper finding of fact before a verdict of guilty could be returned. "The corpus delicti is proven where the circumstances attending the death are consistent with crime, though they may also be consistent with accident (*Commonwealth v. Johnson,* 162 Pa. 63), or suicide (*Zell v. Com.,* 94 Pa. 258), and it is not necessary to show by affirmative proof that the latter two possibilities do not exist before evidence as to who did the act is admitted: *Com. v. Pugliese,* 276 Pa. 235": *Commonwealth v. Gardner,* 282 Pa. 458, 464, 128 A. 87; *Commonwealth v. Turza,* 340 Pa.

128, 135, 16 A. 2d 401. The Commonwealth met the burden of showing all the necessary elements, the death, the commission of a felonious act, and that the act was committed by the defendants, and the jury were instructed to find these elements beyond a reasonable doubt: *Commonwealth v. Gardner,* supra, p. 464. The jury properly found, on the evidence submitted, the fatal blows were those struck by the defendants and not those blows to the head caused by the falls of this deceased in his struggle to arise after he had been abandoned by those who had assaulted him. Esipovich having been mortally wounded by the defendants, even though he fell and struck his head, thereby hastening his death, the self-inflicted injury was not the act of an intervening responsible agent, but of one rendered irresponsible by the wounds inflicted upon him by these defendants and the natural result of those wounds. So the mortal wounds inflicted by the defendants in this case could be none other than the proximate cause of the death of the deceased: *State v. Angelina,* 73 W. Va. 146, 80 S. E. 141.

The proof in this case was by clear, direct and positive testimony of eye witnesses and there was no need for the court to charge on the law of circumstantial evidence. "Where it [the testimony] is direct and positive, the question of sufficiency [of the evidence] is answered. The jury may then pass on the credibility of the witnesses": *Commonwealth v. Benz,* 318 Pa. 465, 472, 178 A. 390. After having charged the jury on the law applicable to the evidence of the case, if the defendant submits a point on circumstantial evidence, which contains a correct statement of the law on that subject and which the court affirms, but which ruled the law more favorable to the defendant than he had a right to claim, he cannot be heard to say such ruling was prejudicial to him.

The defendant complains "The Court erred in neglecting and failing to charge that the Jury could convict either or both of the defendants of second degree or

voluntary manslaughter or return a verdict of acquittal." The language used in *Commonwealth v. Sabo,* 83 Pa. Superior Ct. 166, completely answers this point: "The court did not specially instruct the jury that they might convict either of the defendants and acquit the other. Undoubtedly, the court would have so charged the jury had the matter been called to its attention, for a fair reading of the charge as a whole shows that the jury were not bound to return the same verdict as to both defendants. But the evidence of the Commonwealth as a whole was such as to implicate both defendants jointly in the crime. If the witnesses for the defense were to be believed, neither of the defendants was guilty; on the other hand, if the testimony of the Commonwealth's witnesses was accepted both were concerned in the transaction as joint wrongdoers. Of course, the jury had the right, notwithstanding the testimony connected them as jointly involved, to convict either one and acquit the other, but, at the time, it probably occurred to no one, either counsel or the court, that such a course was at all probable, for it would have been flatly opposed to the evidence. When the trial judge concluded his charge he specially asked if there was anything further desired by way of instructions to the jury, to which neither counsel responded; and no reference was made to the matter in the reasons for a new trial filed six days after verdict. On the other hand, if counsel had the matter in mind at the trial and, notwithstanding the judge's inquiry, purposely refrained from bringing it to the court's attention, intending to use it by way of appeal,—a thing we are confident such eminent counsel would not consider,—they are in no position to take advantage of this action: *Com. v. Pava,* 268 Pa. 520, 525. . . . A careful reading of the evidence fails to convince us that the failure of the court to charge in express terms as to the right of the jury to convict one and acquit the other of the defendants, under the particular facts in evidence in this case, probably or in any reasonable like-

lihood, affected the jurors in reaching their decision."

The defendants proposed to ask John Sardula, the principal witness for the Commonwealth, if "he was arrested for drunkenness and disorderly conduct and made to pay costs or fine and costs and was committed to jail on 26 different occasions; the purpose being to affect the credibility of the witness and to permit the jury to know the type and kind of man who is testifying." The twenty-six offenses mentioned in the offer indicate their type as drunkenness and disorderly conduct. The trial judge ruled this evidence inadmissible. "In determining what are relevant crimes to affect credibility, the question is ordinarily for the trial judge": *Commonwealth v. Quaranta,* 295 Pa. 264, 273, 145 A. 89; *Commonwealth v. Cauffiel,* 97 Pa. Superior Ct. 202, 210. A witness in a criminal prosecution, not himself the defendant, may be asked on cross-examination, for the purpose of affecting his credibility, whether he has not been convicted of a felony or of a misdemeanor in the nature of crimen falsi: *Commonwealth v. Varano,* 258 Pa. 442, 446, 102 A. 131; *Commonwealth v. Robzin et al.,* 78 Pa. Superior Ct. 290, 292; but in this instance the convictions concerning which the witness was to be interrogated were not of that character and the trial judge properly exercised his discretion in refusing to permit this cross-examination.

We have carefully examined the record, read the testimony of the many witnesses called, and are satisfied the defendant received a fair trial. There was ample evidence to sustain the verdict of the jury.

On May 9, 1944, the defendants filed with this court a petition to have the case referred back for a new trial because of evidence they had discovered which tended to impeach the witness, John Sardula. The effect of the four supporting affidavits attached to the petition was that John Sardula had a conversation with the witnesses making the affidavits, on May 2, 1944, and in that conversation he had stated that he was not even present

at the time the alleged fatal blows were supposed to have been struck by the defendants; and that his testimony given at the trial was false. After-discovered evidence offered only to impeach the credibility of the witness, furnishes no sufficient reason for granting a new trial: *Commonwealth v. Flanagan*, 7 W. & S. 415; *Commonwealth v. Carter*, 272 Pa. 551, 116 A. 409; *Commonwealth v. Becker*, 326 Pa. 105, 119, 191 A. 351; *Commonwealth v. Giacobbe*, 341 Pa. 187, 197, 19 A. 2d 71.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as she may be there called and that she be by that court committed until she has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.