Commonwealth *v.* Boykin, Appellant.

Argued April 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Robert J. Shenkin,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him, *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, December 20, 1972:

On January 12, 1971, Bruce Carlisle, a four-month-old infant, was found dead by members of the Philadelphia Police Department responding to an emergency call from the residence of appellant, Margaret Boykin. A police officer observed a large spot of what appeared to be "dried blood" on the appellant's white blouse. A post-mortem examination of the infant's body, conducted by the medical examiner, disclosed that the infant died from "suffocation".

The following day, appellant, who had been caring for the baby for some weeks prior to his death, was interrogated by the Philadelphia Police Department Homicide Division, concerning the death. Appellant was given the required warnings, after which she gave a statement, which was typed by a police detective, in

which she admitted that she had held the baby's head against her chest to stop him from crying. In this statement, she conceded that she had held the baby "excessively tight" but stated that she did not realize this until she noticed blood from the baby's nose on her blouse. In her signed statement, she admitted that earlier versions she had given the police orally concerning the incident "were lies". This statement was signed at 3:10 a.m.

Three and one-half hours later, appellant orally admitted to a detective that when she held the infant tightly against her shoulder, she knew that "it would smother him". She further admitted that she "deliberately smothered" the infant. Following the oral admission of her culpability for the death of Bruce Carlisle, she orally confessed to the deliberate smotherings of two other infants.

Appellant was indicted on charges stemming from the deaths of each of the three infants. The three cases were severed, on motion of appellant's counsel, and having waived a jury trial, appellant was tried nonjury on October 27, 1971, on the indictments relating to the death of Bruce Carlisle. After a four-day trial, appellant was adjudged guilty of voluntary manslaughter. After denial of her post-trial motions, appellant was sentenced to a term of imprisonment not to exceed ten years. This appeal followed.

Appellant first argues that the evidence was insufficient to sustain the verdict. However, the appellant's oral admission that she knowingly smothered the infant and the medical examiner's testimony that suffocating was, in fact, the cause of the infant's death, amply support the court's verdict. Consequently, the principal question in this case is whether appellant's oral confession was properly admitted into evidence. Appellant raises two separate contentions in her challenge to the admissibility of her confession.

She first contends that the statement should not have been admitted because her purported waiver of her rights to remain silent and to have the advice of counsel was constitutionally ineffective because she had not been informed of the nature of the crime for which she was being questioned. In support of this contention, appellant emphasizes that at the pretrial suppression hearing, the Commonwealth's police witnesses admitted that they had never told appellant specifically that she was suspected of having murdered the Carlisle baby. Instead, she was simply told the officers "were investigating the [baby's] death".

Appellant relies on our opinion in *Commonwealth v. Collins*, 436 Pa. 114, 121, 259 A. 2d 160 (1969), where we said that "an intelligent and understanding waiver of the right to counsel is impossible where the defendant has not been informed of the crime which is being investigated."

However, regardless of the precedential value of our decision in *Collins*,[1] it is easily distinguishable from the instant case. Here, the evidence shows that the appellant was told, more than once, that the police were investigating the death of the Carlisle baby. We believe that this is sufficient to alert the appellant to the fact that she was involved in a possible criminal homicide case, since she knew that the police would not have investigated the baby's death unless a crime were suspected. The fact that the appellant was not told that the police suspected that a specific degree of homicide, or negligent manslaughter, had been committed makes no difference. Before the appellant made her oral confession, the police could only suspect that the baby's death was caused by some criminal conduct. They had no valid reason for specifying that they suspected an intentional rather than a negligent homicide.

---

[1] See *Commonwealth v. Cooper*, 444 Pa. 122, 278 A. 2d 895 (1971).

Appellant next argues that her statement should not have been admitted because the Commonwealth failed to prove the corpus delicti. To support her contention that no corpus delicti was established, appellant asserts that absent hearsay elements in the opinion of the medical examiner that the cause of death was unnatural,[2] the evidence only proved a death consistent with both accidental and criminal causes.[3] Under Pennsylvania law, that is all the Commonwealth had to do. See *Commonwealth v. Gockley*, 411 Pa. 437, 192 A. 2d 693 (1963); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A. 2d 861 (1960); *Commonwealth v. Kostan*, 349 Pa. 560, 37 A. 2d 606 (1944).

As we said in *Commonwealth v. Gockley, supra*, at 454, quoting from *Kravitz, supra*: "The corpus delicti, like other facts, may be shown by circumstantial evidence; it is sufficient if these circumstances are consistent with crime even though they are also consistent with suicide or *accident;* if it were otherwise, it would be impossible in many cases, where there were no eyewitnesses, to convict a criminal: [citing cases]." (Emphasis supplied.)

In this case, where the medical examiner found that the infant died from suffocation, which cause of death was consistent with both criminal homicide and accident, the Commonwealth offered sufficient proof of the corpus delicti to establish its right to offer the appellant's extrajudicial statement into evidence.

Appellant's contention that the medical examiner's opinion was based on hearsay reports and, therefore,

---

[2] The medical examiner admitted that his conclusion that the baby's suffocation was due to "unnatural" means was based, in fact, on reports that the appellant had admitted that she deliberately caused the suffocation.

[3] Evidence was offered that an examination of the infant's body disclosed the presence of no diseases and the toxicology report eliminates the possibility of gases, poisons, or other foreign substances.

should not have been admissible is unsupported by the record. The examiner's conclusion that the baby died from suffocation was reached independently from the police reports. The reports only led him to conclude that the suffocation was from "unnatural" means. As we have already said, evidence that the cause of death was suffocation, whether "natural" or "unnatural" is sufficient to render the appellant's extrajudicial statements admissible.

Appellant makes one more allegation of error. She contends that a police detective should not have been permitted to testify for the Commonwealth, in rebuttal, concerning statements she had made to him confessing to having smothered two other babies in the same year; in both cases "to stop them from crying".

Appellant argues that this testimony should not have been admitted under the general rule outlined in *Commonwealth v. Wable*, 382 Pa. 80, 114 A. 2d 334 (1955), where we said, at page 84: "It is true, of course, that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime, because the fact of the commission of one offense is not proof of the commission of another. . . . But it is also true that sometimes there exist the 'special circumstances' which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." (Emphasis in original.)

In its brief, the Commonwealth argues that the evidence was not presented to show appellant's "propensity to commit infanticides". Rather, the Commonwealth contends that it was offered to rebut the appellant's denial on cross-examination that she had admitted smothering the other babies. However, if evidence of the other two incidents were otherwise inadmissible, then it would be equally improper to permit cross-examination concerning these other incidents. Therefore, we must decide whether evidence of the other two occurrences, whether by cross-examination or by direct testimony concerning the appellant's previous admissions, was properly admissible under the rule enunciated in *Wable*.

Evidence of previous crimes is generally inadmissible because its tendency to prejudice a jury unfairly usually outweighs its tendency to prove a material fact at issue. In this case, the real issue was whether the Carlisle infant suffocated by accident or as a result of the appellant's deliberate conduct. The appellant's admissions that two other infants who suffocated while in her care died as a result of her deliberate acts, in smothering the infants to keep them from crying, matches the explanation she previously gave in this case and indicates that the three infanticides are logically related by a "common motive or design". The fact of these previous admissions is logically relevant to a determination of whether her original admission of guilt in this case is to be believed or whether, as she contends, the Carlisle baby's death was due to an innocent accident.

Judgment of sentence affirmed.

Mr. Justice MANDERINO concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that the trial court did not err in allowing the Commonwealth to introduce the oral confession of

the appellant admitting intentionally suffocating two other infants besides the deceased Bruce Carlisle. However, I believe that the majority's application of *Commonwealth v. Wable*, 382 Pa. 80, 114 A. 2d 334 (1955), to reach that result is inaccurate.

*Wable* stands only for the proposition that evidence of prior crimes is admissible where a common scheme, plan or design in fact exists. The prior criminal activity of the defendant is only admissible when, in conjunction with the crime for which the defendant is then on trial, ". . . it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." Id. at 84, 114 A. 2d at 336-37.

Evidence of prior crimes (under the common scheme, plan or design exception) is admissible where it tends "[t]o prove the existence of a *larger continuing* plan, scheme, or conspiracy, *of which the present crime on trial is a part.*" McCormick, Law of Evidence, §157 (1954 Ed.) (emphasis added) (footnotes omitted). Here, the Commonwealth did not prove, nor even attempt to prove, that the death of Bruce Carlisle was a part of any *larger continuing* plan, scheme or conspiracy.[1] Accordingly, the majority's reliance on *Wable* is misplaced.

The general rule, "as stated by most courts, is that evidence of other offenses is inadmissible in a criminal

---

[1] Robert Wible, one of the infants whose death appellant confessed to, died four months prior to the demise of Bruce Carlisle. The other child, Brent Traverse, died approximately two years before Bruce Carlisle.

prosecution for a particular crime. This rule is qualified by a number of exceptions stated in terms of the capacity of the evidence to prove some specific fact or issue such as *intent,* plan, scheme or design. But since the range of relevancy, other than for the purpose of showing criminal propensity, is almost infinite, we think the rule may be phrased a little less mechanically. Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." *U. S. v. Stirone,* 262 F. 2d 571, 576 (3rd Cir. 1958), rev'd. on other grounds, 361 U.S. 212 (1960). (Emphasis added.) (Citations omitted.) (Footnotes omitted.)

Thus, appellant's oral confession, admitting two other infanticides, was admissible on grounds other than common plan, scheme or design, in that it was relevant in proving her "intent" to take the life of Bruce Carlisle. Appellant contended that the death of the child was accidental. On direct examination, appellant testified: "BY MR. SHENKIN: Q. Do you remember at 6:45 a.m. on 1-14-71, which would be just after the morning after you had given the written statement, did you tell Detective Dubiel that you held the baby against your shoulder knowing that it would smother? A. No, I did not. Q. When you held the baby were you smothering the baby? A. No, I wasn't. Q. Did you mean to smother the baby? Did you want to? *Was it your intention?* MR. D'AMBROSIO: Objection. I didn't hear any answer to any of these questions. A. I didn't understand the question. Q. If you don't understand the question, answer that. When you held the baby did you *intend* to smother it? A. *No, I did not.*"

In light of appellant's defense of accident, and her supporting testimony, it was permissible for the Commonwealth to introduce evidence tending to establish her felonious intent.

34

It is well settled that ". . . when intent is an essential element of the offense charged, other offenses similar to and not too remote from the crime charged may be shown." *U. S. v. Laurelli,* 187 F. Supp. 30, 33 (M.D. Pa. 1960), affirmed, 293 F. 2d 830 (3rd Cir. 1961), cert. denied, 368 U.S. 961 (1962). See also, McCormick, Law of Evidence, §157 (1954 Ed.); *Commonwealth v. Kravitz,* 400 Pa. 198, 217, 161 A. 2d 861, 870 (1960), and the cases cited therein. As this Court stated in *Commonwealth v. Novak,* 395 Pa. 199, 204, 150 A. 2d 102, *105* (1959): "Evidence to prove motive, *intent,* plan or design is admissible [citing cases]." (Emphasis added.) (Citations omitted.)

Further, as stated by Wigmore in discussing the "intent" exception to the general prohibition against the introduction of evidence of prior crimes: "It is not here necessary to look for a general scheme or to discover a united system in all acts; the attempt is merely to discover the intent accompanying the act in question; *and the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand."* II Wigmore on Evidence, §302 (3rd Ed. 1940).

Thus, where as here, the crime (murder) involves the element of intent, the Commonwealth may be allowed, within the discretion of the trial court, to show other crimes in *rebuttal* (as was done in the instant case), particularly "after the issue [intent] has been sharpened by the defendants giving evidence of accident or mistake. . . ." McCormick, Law of Evidence, §157 (1954 Ed.).

I join in the result reached by the majority.

Mr. Chief Justice JONES joins in this concurring opinion.

----

DISSENTING OPINION BY MR. JUSTICE NIX:

I respectfully dissent.

One of the contentions raised by the appellant was that the confession was improperly admitted because the Commonwealth failed to prove the corpus delicti. In reaching its conclusion today the majority has, in my view, misapplied formerly, well established principles of criminal law. From the earliest cases, this Commonwealth, striving to avoid convictions based on confessions where no crime exists, adopted a rule of caution which holds that the corpus delicti must be proven independent of a confession before a conviction can be allowed to stand. *Grant v. Commonwealth,* 71 Pa. 495 (1872); *Johnson v. Commonwealth,* 115 Pa. 369, 9 A. 78 (1886).

In *Commonwealth v. Puglise,* 276 Pa. 235, 238, 120 A. 401 (1923), this court stated: "Before a conviction can be had, it must always appear, beyond a reasonable doubt, that death was caused as a result of some felonious act, and if this is shown, then the agency of the defendant in committing the crime may be made evident by his voluntary declarations. We do not mean to say that the prosecution must necessarily call witnesses to negative the idea of suicide, but if, under the circumstances developed by the evidence produced, a doubt as to the cause of death is disclosed, then the court should instruct the jury to consider this question, disregarding any confession admitting guilt: Gray v. Com., 101 Pa. 380. 'The jury should first pass upon the sufficiency of the evidence of the corpus delicti, and if it satisfies them beyond a reasonable doubt that the crime has been committed, then they are at liberty to give the confession such weight as it is entitled to,

taking into view the circumstances surrounding it and the extent to which it has been corroborated. All the law requires is that the corpus delicti shall be proved as any other fact, that is, beyond a reasonable doubt, and that doubt is for the jury.' " (Citation omitted.) The court elaborated upon this rule in *Commonwealth v. Gardner,* 282 Pa. 458, 463, 128 A. 87 (1925): "To avoid the injustice of a conviction where no crime exists, the law has adopted a rule of caution which holds that the corpus delicti must be proven before a conviction can stand. This is emphasized where the state's case depends on a confession by defendant. The fact that a crime has been committed by someone must be shown before the confession will be received: Gray v. Com., 101 Pa. 380; Com. v. Puglise, 276 Pa. 235. The person for whose death a prosecution is instituted may be alive, so evidence that he or she is in fact dead is imperative. As death may have resulted from a cause other than a felonious act, there must be evidence that it occurred under circumstances which point to the commission of a crime. In this manner the corpus delicti is shown. In some states the term corpus delicti includes only the first of the above elements, namely, an injury or loss. But in this and most of the states it covers in addition criminal agency causing the injury or loss." (Citations omitted.)

It is therefore clear that the rule as initially formulated was two-pronged. First, the Commonwealth had no affirmative obligation to exclude the possibility of accident or suicide in establishing the corpus delicti. Secondly, the Commonwealth had an affirmative duty to produce evidence that the death resulted from a criminal agency. These aspects of the rule are not mutually exclusive. The reason for the rule is set forth in *Puglise,* quoting from *Commonwealth v. Gray,* 71 Pa. at 386: "While it is familiar law that a confession is not evidence in the absence of proof of the corpus

delicti, yet I am not aware of any case which holds that the corpus delicti must first be proved beyond the possibility of doubt. It is a fact to be proved like any other fact in the cause, and be found by the jury upon competent evidence. The true rule in such cases is believed to be this: When the Commonwealth has given sufficient evidence of the corpus delicti to entitle the case to go to the jury, it is competent to show a confession made by the prisoner connecting him with the crime." 276 Pa. at 238-239. The recognition that the Commonwealth was not required to exclude the possibility of suicide or accident was simply another means of stating that proof of criminal agency need not be established beyond a *possibility* of a doubt.

Concluding that the Commonwealth has no obligation to affirmatively exclude the possibility of accident is not, however, synonymous with a holding that the Commonwealth has no responsibility of establishing affirmatively that the death was caused by a criminal agency. Many deaths are consistent with felonious homicide; however, this fact alone cannot justify a finding that the Commonwealth has necessarily met its burden to prove a criminal agency.

The majority asserts that there is authority for its present view in the cases of *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963); *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861 (1960); *Commonwealth v. Kostan,* 349 Pa. 560, 37 A. 2d 606 (1944). I believe that these cases do not provide support for the majority's position. Admittedly, the three decisions referred to the portion of the rule indicating that the Commonwealth had no duty to exclude accident or suicide; however, I do not feel that there is anything in these decisions that repudiates the remainder of the rule that requires the Commonwealth to establish affirmatively the criminal agency. In *Kostan* and *Gockley,* it was contended that the Commonwealth had

failed to establish a corpus sufficient to justify the admission of a confession or admission because it had failed to eliminate the possibility of an accident. The court in these decisions properly referred to the portion of the rule that eliminated the necessity of this requirement. It is, however, significant to note that in each of these decisions there was more than sufficient evidence for a jury to conclude that death had in fact resulted from a criminal agency. In *Gockley* the decedent's body was found buried on the defendant's premises and his body contained shotgun discs, wadding and pellets. In *Kostan,* there was direct testimony that a co-defendant had struck the deceased over the left side of the head with a club the size of a policeman's mace knocking the decedent to the ground. The defendant in that case was then observed striking the deceased with a beer bottle over the right side of the head causing the bottle to break. The medical testimony established that the decedent died of shock and intracranial hemorrhage following a fracture of the skull.

In *Kravitz* the objection was that the proof of corpus delicti must include evidence of the identity of the guilty party. This obviously is not the rule and was properly rejected. Here also, there was no question of the sufficiency of evidence offered to allow a jury to find beyond a reasonable doubt that the deceased had died from a criminal agency. Equally significant is that none of the defendants in the cases relied upon by the majority raised the question as to the sufficiency of the evidence to prove criminal agency. It is my belief, after an exhaustive review of the cases in this jurisdiction on the subject, that there is absolutely no precedent for the majority's present decision to reduce the burden of proof necessary for the Commonwealth to establish a death resulting from a criminal agency.

In the case at bar there was as a matter of law insufficient evidence (independent of the confession) to establish a criminal agency beyond a reasonable doubt and the court was duty bound to remove the matter from the jury's consideration. Considering the evidence in this case, the majority admits in footnote 2 that the testimony of the medical examiner to the effect that the baby died from "unnatural means" was based on his reading of the police report which indicated that the defendant had admitted to deliberately suffocating the baby. The only competent medical evidence, therefore, is completely neutral on the issue of the presence of criminal agency. Excluding information derived from the confession, the only evidence tending to show criminal agency is the fact that the appellant had custody of the baby at the time of the death, and that the appellant was observed wearing a blouse with what appeared to be a spot of dried blood.[1]

In view of the new constitutional procedural safeguards that we have developed in recent years to assure the veracity of statements and to prevent coercion, there may be some justification for relaxing the former requirements pertaining to the proof of corpus delicti. If this was in fact the basis for the majority's present view it should have been so noted rather than deliberately distorting a time honored rule of our law.

---

[1] Not only did the Commonwealth fail to introduce evidence of a chemical analysis to establish that this spot was in fact dried human blood, the record is barren of any evidence (other than the confession) connecting the spot to the baby's death.