681 A.2d 717

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Kim Lee McMULLEN, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1994.

Decided July 31, 1996.

Robert B. Stewart, District Attorney, for Appellant.

Charles J. Kroboth, Law Office of David A. Flood, Bellefonte, for Appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

The Commonwealth appeals from an order of the Superior Court vacating the sentences imposed upon Appellee, Kim Lee McMullen, for second degree murder [1] and burglary [2] by the Court of Common Pleas of Huntingdon County. *Commonwealth v. McMullen*, 420 Pa.Super. 130, 616 A.2d 14 (1992).[3] In admitting into evidence a presumed inculpatory statement made by Appellee, the trial court determined that the corpus delicti for the homicide charge had been established under *Commonwealth v. Boykin*, 450 Pa. 25, 29, 298 A.2d 258, 261 (1972), which provides that independent evidence is sufficient to establish corpus delicti if it is equally as consistent with an accident as with a crime. The Superior Court reversed, determining that inculpatory statements are admissible only if independent evidence indicates more likely than not that a crime was committed. *McMullen*, 420 Pa.Super. at 135–36, 616 A.2d at 16–17 (citing *Commonwealth v. Byrd*, 490 Pa. 544, 417 A.2d 173 (1980); *Commonwealth v. Leslie*, 424 Pa. 331, 227 A.2d 900 (1967)). The Superior Court found the independent evidence in this matter insufficient to establish the corpus delicti for the homicide charge but vacated *both* the burglary and murder convictions. For the reasons stated below, we affirm that portion of the Superior Court's Order vacating the murder conviction but reverse that portion which vacated Appellee's burglary conviction.

In the late evening or early morning hours of February 23–24, 1985, the Grocery Box, a food store in Orbisonia, Pennsylvania, was burglarized. Eight days later, on March 4, 1985, the body of Dominic Barcelona was recovered from Black Log Creek, not far from the Grocery Box. The body was about

1.  18 Pa.C.S. § 2502(b).

2.  18 Pa.C.S. § 3502.

3.  Because of the retirement of the trial judge, no trial opinion was prepared in this matter.

400 to 500 yards downstream from a highway bridge and about 300 yards downstream from a railroad bridge. Barcelona, a 30-year old schizophrenic, was well known throughout the community for his habit of taking extensive walks. He also walked with a limp sustained as a result of being hit by a car during one of these walks.

At the time of these events, the police made no connection between the burglary and Barcelona's death. Instead, police concluded that Barcelona accidentally drowned because neither Barcelona's body nor the location of his death bore evidence of foul play. This conclusion was supported by the pathologist who autopsied Barcelona and also by the county coroner.

However, after rumors surfaced that the burglary and drowning were related, the Pennsylvania State Police reopened both investigations in the latter part of 1989. Appellee, who was then incarcerated on other charges, gave a statement averring that he and another man, Adam Wiser, burglarized the Grocery Box and, while fleeing, encountered Barcelona on a nearby bridge. *McMullen,* 420 Pa.Super. at 133, 616 A.2d at 15. Appellee further stated that Wiser, not he, threw Barcelona into the creek after apparently knocking him to the ground. *Id.*

After investigators interviewed Wiser and determined that he was not involved in the burglary or Barcelona's demise, the Commonwealth charged Appellee with the burglary of the Grocery Box and criminal homicide regarding Barcelona's death. These charges were tried together in December of 1990.

At Appellee's trial, Barcelona's mother testified that her son would not have been on either the highway or railroad bridge voluntarily because he was afraid of both heights and water. However, she acknowledged on cross-examination that he might cross a bridge if he had to and that she was not certain of his conduct during his night walks because she did not accompany him. Further, witnesses interviewed at the time

of Barcelona's death stated that they saw him at or near the town bridge at the time of his disappearance.

The pathologist who autopsied Barcelona in 1985 testified and reiterated his conclusion that Barcelona accidentally drowned because of the condition of his body and the fact that neither his body nor the location of the drowning showed signs of a struggle. Also, while he noted that Barcelona had some bruising and lacerations on his forehead which occurred prior to death and which could not have been caused by the impact upon falling from the bridge, he also stated that they could have been sustained after Barcelona fell into the creek but prior to his drowning. The pathologist also commented that no additional evidence had come to light since 1985 that would have a bearing on his autopsy record.

Barcelona's treating psychiatrist testified and noted that manifestations of Barcelona's schizophrenia included hearing voices and having delusions. While various medications were prescribed for Barcelona, he resisted taking them, and he also resisted hospitalization for treatment. Barcelona had also placed himself at risk on occasion by walking into roadways without regard to traffic and had actually been struck by a car in November of 1983, breaking his leg.

Prior to the Commonwealth's presentation of testimony regarding Appellee's statement, and again at the close of the Commonwealth's case, Appellee objected to the admission of the statement because the corpus delicti of the homicide charge had not been established. In support of his position, Appellee cited case law of this Court holding that independent evidence cannot establish corpus delicti if it is merely equally as consistent with an accident as with a crime. However, the trial judge rejected Appellee's argument, instead relying on *Boykin* to conclude that "[i]t is sufficient" to establish corpus delicti "if these circumstances are consistent with crime even though they are also consistent with accident or suicide." (R.R. at 259a)(citing *Boykin*, 450 Pa. at 29, 298 A.2d at 261). The trial judge determined that the evidence met the *Boykin* standard and thus admitted Appellee's statement.

Appellee was ultimately convicted by the jury of both the burglary and second degree murder and was immediately sentenced on the murder conviction to mandatory life imprisonment. *McMullen,* 420 Pa.Super. at 132, 616 A.2d at 15. He also received a sentence of eleven months to five years on the burglary conviction. *Id.* McMullen then filed separate appeals from the sentences, which the Superior Court consolidated for review. *Id.*

On appeal, Appellee raised various issues for review, including the contention that the corpus delicti had not been established on the homicide charge.[4] Assuming Appellee's statement to be inculpatory, the Superior Court agreed with Appellee, determining that case law both prior and subsequent to *Boykin* required that the independent evidence be more consistent with a crime than with an accident in order to establish corpus delicti. *Id.* at 135–36, 616 A.2d at 16–17 (citing *Byrd; Leslie*). Noting that the Superior Court itself had relied on *Byrd* in recent cases, *see, e.g., Commonwealth v. Forman,* 404 Pa.Super. 376, 590 A.2d 1282 (1991), the court concluded that the *Boykin* standard had been impliedly overruled. *McMullen,* 420 Pa.Super. at 136, 616 A.2d at 17.

Using the *Byrd* standard, the Superior Court determined that corpus delicti was lacking because nothing indicated that Barcelona's death was more likely a homicide than it was an accident. *Id.* Therefore, the court vacated McMullen's convictions and judgments of sentence and remanded the matter for a new trial. This appeal by the Commonwealth followed.

4. Prior to reaching the corpus delicti issue, the Superior Court determined that the trial court did not err in failing to quash or dismiss the homicide charge on the basis of a defective information. *Id.* at 133–34, 616 A.2d at 15–16. The Superior Court also ruled that the trial court properly consolidated the burglary and homicide charges for trial. *Id.* at 134, 616 A.2d at 16. Because of its disposition of the corpus delicti issue, the court did not reach other issues raised by Appellee, which, based upon Appellee's brief filed with this Court, appear to have been whether (1) the jury was properly instructed on corpus delicti; and (2) whether Appellee was entitled to an instruction on involuntary manslaughter. Appellee did not file a cross-appeal with this Court. Thus, we need not address these concerns.

Under the corpus delicti rule, extra-judicial inculpatory statements of the accused may not be admitted into evidence unless it is corroborated by independent evidence that a crime actually occurred. *Commonwealth v. Ware*, 459 Pa. 334, 365, 329 A.2d 258, 274 (1974); *see also Commonwealth v. Smallwood*, 497 Pa. 476, 484, 442 A.2d 222, 225 (1982) (rule extends to accused's statements, not purely formal confessions). The rule is designed to guard against "the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." *Commonwealth v. Turza*, 340 Pa. 128, 134, 16 A.2d 401, 404 (1940).

Literally "the body of the crime," corpus delicti consists of the occurrence of a loss or injury resulting from some person's criminal conduct. *Ware*, 459 Pa. at 365, 329 A.2d at 274. The criminal responsibility of the accused in particular is not a component of the rule. *Commonwealth v. Ahlborn*, 441 Pa.Super. 296, 301, 657 A.2d 518, 521, *appeal pending*, 334 W.D. Allocatur Docket (1995).

Since the corpus delicti rule attaches to inculpatory statements only, our starting point must be whether Appellee's statement was indeed of an inculpatory nature. While the Superior Court apparently assumed the statement to be inculpatory, the Commonwealth correctly notes that the statement was at least in part exculpatory because Appellee claimed that Wiser, not he, killed Barcelona.

However, as the Superior Court correctly observed in *Commonwealth v. LaRosa*, 283 Pa.Super. 264, 423 A.2d 1247 (1980), a statement denying commission of a crime may still be inculpatory if it places the declarant at the scene of the crime or indicates a motive for committing the crime. In *LaRosa*, a stabbing victim interviewed within minutes of his assault told police that LaRosa committed the stabbing. *Id.* at 266, 423 A.2d at 1248. At trial, however, the victim testified that he did not recall making the statement, nor did he know who stabbed him. *Id.* at 268–69, 423 A.2d at 1250. However, the

statement was admitted into evidence, over LaRosa's objection, as an excited utterance.

Further, the Commonwealth introduced into evidence a statement from LaRosa denying that he had stabbed the victim but admitting that he had visited the victim's home on the morning of the stabbing. *Id.* at 266, 423 A.2d at 1249. LaRosa stated that the purpose of his visit was to "laugh" at the victim for allegedly threatening him and attacking LaRosa's girlfriend. *Id.* At his non-jury trial, LaRosa was convicted of aggravated assault. *Id.* at 267, 423 A.2d at 1249.

On appeal, LaRosa contended that the Commonwealth had not proven his guilt beyond a reasonable doubt because the evidence consisted primarily of the victim's out-of-court excited utterance and, at trial, the victim could neither recall having made the statement nor identify who stabbed him. However, the Superior Court reasoned that the conviction was proper because the trial court had ample reason to discount the victim's in-court testimony and LaRosa's statement linking him to the crime. *Id.* at 268, 270, 423 A.2d at 1249, 1250–51. Regarding LaRosa's statement, the Superior Court noted that although "it was partially exculpatory, containing as it did his denial of being [the victim's] assailant . . . his statement was inculpatory insofar as it placed LaRosa at the scene of the crime approximately at the time it was committed, and established a motive for LaRosa's assaulting [the victim]." *Id.* at 266, 423 A.2d at 1249.

Like LaRosa's statement, Appellee's statement was also inculpatory because, even though he denied having murdered Barcelona, he admitted that he was present when Wiser allegedly threw him over the bridge. Further, he stated that he and Wiser encountered Barcelona while fleeing the scene of a burglary. Thus, Appellee's statement implicates him because it places him at the scene of the alleged murder and reveals a motive for the alleged murder, namely, to kill the witness to a crime. Therefore, although the statement is not a confession to Barcelona's murder, it is inculpatory for purposes of the corpus delicti rule.

■ Having determined that Appellee's statement was inculpatory, we must next consider the degree to which evidence independent of such an inculpatory statement must point to criminal activity. While the Appellee acknowledges that the Commonwealth is under no affirmative duty to rule out an accident as a source of the loss, he maintains that the evidence must be *more* consistent with criminal activity than with non-criminal conduct. *See Commonwealth v. Byrd*, 490 Pa. 544, 556, 417 A.2d 173, 179. The Commonwealth, on the other hand, argues that the evidence need only be equally consistent in order to admit the statement. *Commonwealth v. Boykin*, 450 Pa. 25, 29, 298 A.2d 258, 261.

■ While the Superior Court correctly determined that the *Byrd* standard ultimately governed the admissibility of Appellee's statement, the court was not correct that *Boykin* had been implicitly overruled by this Court. Instead, as Appellee correctly notes, *Boykin* and *Byrd* may be read in concert, with *Boykin* standing for the principle of consistency and *Byrd* defining the level of consistency necessary for admissibility—i.e., that the evidence must be more consistent with a crime than with an accident.

It is noteworthy that when this Court had an opportunity to declare either *Byrd* or *Boykin* as the proper standard in *Commonwealth v. Edwards*, 521 Pa. 134, 555 A.2d 818 (1989), this Court instead relied on both opinions in reaching our decision. In determining that sufficient independent evidence of rape existed to establish the corpus delicti, we cited *Boykin* for the proposition that the evidence is sufficient if consistent with crime, even though it might also be consistent with an accident. *Edwards*, 521 Pa. at 145, 555 A.2d at 824 (citing *Boykin*, 450 Pa. at 29, 298 A.2d at 261). However, we also observed that "a case may not go to a jury merely on the out-of-court confession of the accused where there is no independent evidence of a crime." *Id.* at 144, 555 A.2d at 823 (citing *Ware*, 459 Pa. at 366, 329 A.2d at 274). Further, we cited *Byrd* for the principle that the Commonwealth need not go so far as to prove the existence of a crime beyond a reasonable

doubt before the statement could be admitted. *Id.* (citing *Byrd* ).

Thus, contrary to the Superior Court's view that our decisions subsequent to *Boykin* have impliedly overruled it, these decisions have instead continued to rely on *Boykin* for the requirement that the evidence be consistent with a crime. However, the Superior Court was ultimately correct that the trial judge erred in relying upon the *Boykin* standard alone because cases both prior and subsequent to *Boykin* have further defined the level of consistency necessary; namely, that the evidence be *more* consistent with a crime than with an accident.

In the present matter, we have no difficulty concluding that the evidence independent of Appellee's statement was insufficient to establish the corpus delicti for the homicide charge. The only evidence pointing to foul play were the bruises and lacerations on the decedent's face, and the pathologist could not conclude that these blows were more likely caused by an assailant than they were by decedent's striking objects after falling into the water. On the other hand, much evidence pointed to the decedent's death being an accident, including the lack of signs of a struggle and decedent's own behavior. Most notably, no new evidence other than Appellee's statement surfaced between the time of the original findings of accidental death and the reopening of the burglary and death investigations.[5]

5. The Commonwealth maintains that the Superior Court ignored certain pieces of evidence tending to establish that Barcelona's death was not accidental—namely, his mother's testimony that he was afraid of water and heights; the condition of the railroad bridge, which was so hazardous that Barcelona would never have attempted to cross it; the fact that persons seeing Barcelona on the night of the alleged homicide did not observe any bruising on his face; and the testimony of a woman who saw a male carrying a box away from the area of the burglary site and toward the railroad bridge at about 5 a.m. on February 24. However, none of this evidence makes it more likely than not that Barcelona's death was the result of criminal activity. First, Barcelona's mother admitted that she did not observe Barcelona during his night walks, and others testified that they saw Barcelona on or near the town bridge at about the time of the alleged homicide. Second, Barcelona was known to engage in hazardous and irrational conduct, and the

■■■■ The Commonwealth argues that, under *Commonwealth v. DiSabatino,* 399 Pa.Super. 1, 581 A.2d 645 (1990), *appeal denied,* 527 Pa. 629, 592 A.2d 1297 (1991), Appellee's statement regarding the alleged murder is admissible because the corpus delicti for the burglary was clearly established. Specifically, the Commonwealth directs this Court to *DiSabatino*'s language that

> [w]here a defendant's confession relates to two separate crimes with which he is charged, and where independent evidence establishes the corpus delicti of only one of those crimes, the confession may be admissible as evidence of the commission of the other crime. This will be the case only where the relationship between the two crimes is sufficiently close to ensure that the policies underlying the corpus delicti rule are not violated.

*Id.* at 6–7, 581 A.2d at 648 (quoting *Commonwealth v. Tessel,* 347 Pa.Super. 37, 46, 500 A.2d 144, 148–49 (1985)).

However, as the Superior Court observed in *DiSabatino,* DiSabatino's two charges, possession of a controlled substance and intent to deliver a controlled substance, shared the common element of possession. *Id.* at 7, 581 A.2d at 648. Under such circumstances, "[o]nce [DiSabatino's] possession of the drugs had been independently established, there no longer existed a danger that a confession would lead to a conviction where no crime had been committed." *Id.*

In contrast, here the relationship between the homicide and burglary charges was not so sufficiently close as to eliminate the danger that Appellee's statement might lead to a conviction of a non-existent crime. Indeed, nothing links the charges except Appellee's statement. Furthermore, burglary

condition of the railroad bridge makes it more likely that, if he attempted to cross this bridge, his fall from the bridge was *accidental.* Third, the fact that no one saw Barcelona with bruises or lacerations in the hours prior to his alleged homicide has no bearing on whether these bruises or lacerations were inflicted by an assailant in the act of homicide. Finally, the testimony of the woman made absolutely no connection between the male, who she was unable to identify, and Barcelona.

and homicide do not share a common element. Therefore, *DiSabatino* is inapplicable.

Consequently, we agree with the Superior Court that the evidence simply does not indicate that Barcelona's death was more likely caused by criminal means than it was by an accident. Therefore, the Superior Court properly found that the trial court erred in admitting Appellee's statement regarding the homicide into evidence.

However, the Superior Court offered no explanation as to why it also vacated Appellee's burglary conviction, and this Court is unable to find a reason for this action. As Appellee himself admits, the corpus delicti of the burglary was clearly established by the testimony of various witnesses, thus supplying a basis for the admission of Appellee's statement regarding the burglary. Further, the alleged trial errors raised by Appellee but not considered by the Superior Court—namely, the jury instruction and involuntary manslaughter issues—do not bear upon the burglary conviction. While Appellee identified several instances of alleged error in the jury instruction on corpus delicti, these errors pertained to corpus delicti for the homicide. Additionally, even if the jury was improperly instructed on the corpus delicti regarding the burglary, such error would be harmless in light of the irrefutable evidence that a burglary indeed occurred.

Therefore, we affirm that portion of the Superior Court's Order vacating Appellee's conviction for second degree murder, but reverse that portion of the Superior Court's Order vacating Appellee's conviction for burglary.

PAPADAKOS and MONTEMURO, JJ., who was sitting by designation, did not participate in the decision of this case.

CAPPY, J., files a concurring opinion.

CAPPY, Justice, concurring.

I join in the decision of the majority. I write separately only to further elucidate my understanding of the majority's holding respecting the interplay between the decisions in *Commonwealth v. Boykin*, 450 Pa. 25, 298 A.2d 258 (1972) and

*Commonwealth v. Byrd,* 490 Pa. 544, 417 A.2d 173 (1980). My understanding of that holding is that *Boykin* merely stands for the proposition that, for purposes of determining the admissibility of an extra-judicial inculpatory statement of the accused, the *corpus delicti* is established if there is evidence, independent of that inculpatory statement, which is consistent, but not merely **equal,** with both accident and criminality; and that the court's later holding in *Byrd,* that the evidence must be **more** consistent with criminality than with accident before extra-judicial inculpatory statements of the accused may be admitted, is no more than a refinement of the *Boykin* standard.