COMMONWEALTH of Pennsylvania,
Appellee,

v.

Kim Lee McMULLEN, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 20, 1999.

Filed Feb. 14, 2000.

William G. Tressler, Bellefonte, for appellant.

Robert B. Stewart, III, Dist. Atty., Huntingdon, for Com., appellee.

Before HUDOCK, EAKIN and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 In this direct appeal from judgment of sentence following Appellant's second murder trial, we consider whether Appellant's double jeopardy rights were violated. For the reasons set forth below, we affirm.

¶ 2 The facts underlying Appellant's conviction are as follows. In the early morning hours of February 14, 1985, a grocery store in Orbisonia, Pennsylvania was burglarized. No suspect was arrested. A week later, the body of Dominic Barcelona, a 30 year old schizophrenic who frequently wandered around the community, was discovered in a creek not far from the scene of the burglary. At the time, the police made no connection between the two events, and, following an autopsy, Barcelona's death was ruled an accidental drowning. Both a highway bridge and railroad bridge were located not far upstream from where Barcelona's body was found.

¶ 3 In late 1989, when rumors surfaced that the burglary and Barcelona's death were related, both investigations were reopened. Appellant, who at that time was incarcerated on other charges, gave a statement to police admitting that he and another man, Adam Wiser, committed the burglary, and, while fleeing, encountered Barcelona on a nearby bridge. Appellant

stated that Wiser knocked Barcelona to the ground and then threw him into the creek.

¶ 4 A police investigation cleared Wiser of culpability in either crime, and Appellant was charged with burglary and homicide. The charges were tried together, and, on December 8, 1990, Appellant was convicted of both crimes. He was immediately sentenced to life imprisonment for the second degree murder conviction, and subsequently sentenced to 11 months to 5 years imprisonment for the burglary conviction.

¶ 5 Appellant appealed both convictions, contending, *inter alia,* that the Commonwealth had failed to establish a *corpus delicti,* and, therefore, the trial court had erred in admitting his inculpatory statement. On direct appeal, we agreed, concluding that there was "no convincing evidence to indicate Barcelona's death was *more* consistent with a homicide than with an accident." *Commonwealth v. McMullen,* 420 Pa.Super. 130, 616 A.2d 14, 17 (1992)(emphasis original). Accordingly, we vacated both convictions and remanded for a new trial. *Id.*

¶ 6 The Commonwealth, however, appealed to the Supreme Court, which affirmed that portion of our Order vacating Appellant's conviction for second degree murder, and reversed that portion vacating Appellant's burglary conviction. *Commonwealth v. McMullen,* 545 Pa. 361, 373, 681 A.2d 717, 723 (Pa.1996). The Court stated:

> In the present matter, we have no difficulty concluding that the evidence independent of [Appellant's] statement was insufficient to establish the corpus delicti for the homicide charge. The only evidence pointing to foul play were the bruises and lacerations on the decedent's face, and the pathologist could not conclude that these blows were more likely caused by an assailant than they were by decedent's striking objects after

* Retired Justice assigned to Superior Court.

falling into the water. On the other hand, much evidence pointed to the decedent's death being an accident, including the lack of signs of a struggle and decedent's own behavior.

*Id.* at 371, 681 A.2d at 722.[1]

¶ 7 Prior to Appellant's retrial on the homicide charge, the Commonwealth petitioned to exhume Barcelona's body and conduct a second autopsy. The trial court granted the Commonwealth's petition, although the petition was not served on Appellant until after the second autopsy had already been completed. Following the second autopsy, the cause of death was definitively ruled a homicide. Appellant subsequently filed a pre-trial motion to dismiss based on double jeopardy.[2] The trial court denied the motion on February 4, 1997, and Appellant filed an appeal to this Court. We affirmed the trial court's ruling, holding that the double jeopardy clause does not bar retrial in cases where the conviction is reversed because of improperly admitted evidence; only when an appellate court finds the evidence insufficient to sustain the verdict does the double jeopardy clause prohibit a retrial. *Commonwealth v. McMullen,* 721 A.2d 370, 371 (Pa.Super.1998) (*"McMullen II"*). We noted that, "although the evidence presently of record is insufficient to establish the *corpus delicti* of murder," the Commonwealth must be granted an opportunity to "present its entire case ... before any review of the sufficiency of the evi-

dence may be undertaken by this Court." *Id.* at 372.

¶ 8 Appellant did not petition the Supreme Court for review. On February 19, 1999, following a second trial, Appellant was once again convicted of second degree murder, and sentenced to life imprisonment. This timely appeal followed.

¶ 9 Appellant ostensibly raises seven issues for our review, but in fact, only five are presented.

1. Did the trial court violate Appellant's double jeopardy rights when it admitted new evidence from the second autopsy to establish the *corpus delicti* of murder?

2. Did the trial court err in denying Appellant's pretrial motion to suppress the results of the second autopsy based on the Commonwealth's violation of Pa.R.Crim.P. 305(D)?[3]

3. Did the trial court err in denying Appellant's pretrial motion to dismiss based on judicial and prosecutorial misconduct?

4. Did the trial court err in denying Appellant's exception to the accomplice charge?

5. Did the trial court err in failing to disqualify the prosecuting attorney?

*See* Appellant's Brief at 4.

¶ 10 The double jeopardy clauses of the United States and Pennsylvania Constitutions are nearly identical in language[4] and co-extensive in scope.[5] *Com-*

1. Conversely, the Court held that the *corpus delicti* of the burglary was clearly established. *Id.* at 373, 681 A.2d at 723. Thus, Appellant's burglary conviction stands.

2. Appellant filed another pre-trial motion seeking, *inter alia,* suppression of the results of the second autopsy, dismissal based on judicial and prosecutorial misconduct and lack of evidence, and a change of venue.

3. Pa.R.Cr.P. 305(D) imposes on both parties a continuing duty to disclose evidence:

If prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or in-

spection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

4. The Double Jeopardy Clause of the 5th Amendment provides that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V. Similarly, Article 1, Section 10 of the Pennsylvania Constitution provides that "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb." PA. CONST. art. I, § 10.

5. Only in cases involving "intentional and egregious prosecutorial misconduct" has the

*monwealth v. Feaser*, 723 A.2d 197, 200 (Pa.Super.1999). It is well settled that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1, 9 (1978). *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661 (1982)("This prohibition ... prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction."). The Double Jeopardy Clause clearly prevents a retrial in two circumstances.

> First, the Double Jeopardy Clause attaches special weight to judgments of acquittal. A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant.

*Tibbs*, 457 U.S. at 41, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. When reversal is based on insufficiency of the evidence, "the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." *Burks*, 437 U.S. at 16, 98 S.Ct. at 2149–50, 57 L.Ed.2d at 12. To permit retrial would "afford the government an opportunity for the proverbial 'second bite at the apple.'" *Id.* at 17, 98 S.Ct. at 2150, 57 L.Ed.2d at 13. However, the Double Jeopardy Clause does not preclude a retrial when a defendant's conviction is overturned on grounds other than the insufficiency of the evidence. *Lockhart v. Nelson*, 488 U.S. 33, 38–39, 109 S.Ct. 285, 289–90, 102 L.Ed.2d 265, 272 (1988)(citing *Burks, supra*).

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

*Burks*, 437 U.S. at 15, 98 S.Ct. at 2149, 57 L.Ed.2d at 12. *See McMullen II, supra*.

■ ¶ 11 The problem presented in the instant case does not fall squarely into either category. *Corpus delicti*, literally "the body of the crime," refers to the fact of a transgression. Black's Law Dictionary 346 (7 th ed.1999). "[I]t consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone." *Commonwealth v. Verticelli*, 550 Pa. 435, 441, 706 A.2d 820, 822 (1998). The *corpus delicti* rule, "rooted in our hesitancy to convict one of [a] crime on the basis of his own statements only[,]" requires the Commonwealth to establish by independent evidence that a crime has been committed before admitting into evidence an inculpatory statement by the accused. *Commonwealth v. Ware*, 459 Pa. 334, 365–66, 329 A.2d 258, 274 (1974). *See Commonwealth v. Gardner*, 282 Pa. 458, 463, 128 A. 87, 89 (1925) ("The fact that a crime has been committed by someone must be shown before the confession will be received."). In a homicide prosecution, "[t]he corpus delicti consists of proof that a human being is dead and that such death

---

Pennsylvania Supreme Court found broader protection under the Double Jeopardy Clause of the Pennsylvania Constitution. *Commonwealth v. Feaser*, 723 A.2d 197, 200 (Pa.Super.1999).

took place under circumstances which indicate criminal means or the commission of a felonious act[.]" *Commonwealth v. Frazier*, 411 Pa. 195, 202, 191 A.2d 369, 373 (1963). Although the Commonwealth need not prove the existence of a crime beyond a reasonable doubt, "the evidence must be more consistent with a crime than with an accident." *McMullen*, 545 Pa. at 370, 681 A.2d at 722 (emphasis added).

¶ 12 On appeal from Appellant's first trial, the Supreme Court concluded that the Commonwealth failed to establish the *corpus delicti* for the homicide charge. Accordingly, Appellant's inculpatory statement should not have been admitted into evidence. However, because the evidence at that trial, albeit dependent on the improperly admitted statement, was sufficient to sustain the verdict, we concluded on interlocutory appeal that the double jeopardy clause did not bar retrial; "[s]ince the record from the first trial contained sufficient evidence to support the conviction, we are only able to find that the evidence is insufficient .if we ignore the improperly admitted inculpatory statement of appellant, an action which we are not permitted to undertake at his point in the proceedings." *McMullen II*, 721 A.2d at 371–72. Specifically, we noted that "[w]hile the record presently before this Court strongly suggests that the Commonwealth will not be able to meet its burden of proof [to establish the *corpus delicti* ], that issue is not yet ripe for review by this Court," *id.* at 372, that is, the Commonwealth should have the opportunity to present its entire case before a ruling on the sufficiency of the *corpus delicti* is made. Now, on appeal, Appellant resurrects his double jeopardy claim, arguing that the trial court "violated principles of double jeopardy when it allowed new evidence over objections by [Appellant]." (Appellant's Brief at 20). We disagree.

¶ 13 After Appellant was granted a new trial, the Commonwealth exhumed Barcelona's body and performed a second autopsy which established that Barcelona's death resulted from criminal means, specifically, drowning following an assault. Although this evidence was available prior to Appellant's first trial, double jeopardy principles do not preclude the Commonwealth from presenting new evidence at a second trial when the first trial is reversed based on an erroneous evidentiary ruling; "[a] second chance for. the defendant, of course, inevitably affords the prosecutor a second try as well." *Tibbs*, 457 U.S. at 43 n. 19, 102 S.Ct. at 2219 n. 19, 72 L.Ed.2d at 662 n. 19. Here, the error was the trial court's improper admission of Appellant's statement.

¶ 14 The Commonwealth's case may be strengthened or weakened by the passage of time. Because the evidence presented during the first trial was legally sufficient to sustain the verdict, albeit strengthened by Appellant's inadmissible statement, the Commonwealth is not precluded from introducing additional evidence during retrial; "the type of 'second chance' that the State receives when a court rests reversal on evidentiary weight does not involve the overreaching prohibited by the Double Jeopardy Clause." *Id.* Therefore, during the second trial, the Commonwealth was permitted to introduce evidence of the second autopsy to establish the *corpus delicti* of murder, and render Appellant's statement admissible.

¶ 15 The Commonwealth contends that Appellant has waived his double jeopardy claim because he failed to petition the Supreme Court for allocatur when this Court denied his interlocutory appeal. We disagree. In the interlocutory appeal, we determined that reversal of a conviction based on the failure to establish the *corpus delicti* does not invoke double jeopardy. Appellant's argument here, although inartfully presented, focuses on the additional evidence presented by the Commonwealth to establish the *corpus delicti* in the second trial. As we stated in the interlocutory appeal, "that issue [was] not yet ripe for [our] review[.]" *McMullen II*, 721

A.2d at 372. We find no case law precluding the Commonwealth from gathering additional evidence before retrial to establish the *corpus delicti* that was clearly lacking in the first trial. In fact, this Court, in its opinion following Appellant's first trial, specifically vacated the convictions and remanded the case for a new trial. *McMullen*, 616 A.2d at 17. On appeal, the Supreme Court affirmed that portion of the Superior Court Order vacating Appellant's murder conviction, and, by implication, affirmed the grant of a new trial. *McMullen*, 681 A.2d at 723. Neither decision precluded the Commonwealth from gathering more evidence before retrial.

¶ 16 As for Appellant's remaining four issues, we find them all waived as he has failed to develop any argument for these claims. Each consists of a one paragraph "argument" with virtually no citation to relevant statutory authority or case law. "When the appellant fails to adequately develop his argument, meaningful appellate review is not possible." *Commonwealth v. Genovese*, 450 Pa.Super. 105, 675 A.2d 331, 334 (1996). *See Commonwealth v. Irby*, 700 A.2d 463, 464 (Pa.Super.1997)(finding appellant's ineffectiveness of counsel claims waived when appellant failed to cite precedent, refer to record, and substantiate arguments). Appellant's blanket assertions here are simply insufficient.

¶ 17 Judgment of sentence affirmed.