J. A20009/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| EARL GRAMBY, | : | No. 3210 EDA 2012 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, June 29, 2012,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0002186-2011

BEFORE: FORD ELLIOTT, P.J.E., MUNDY AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED NOVEMBER 25, 2014**

Appellant Earl Gramby appeals from the judgment of sentence entered on June 29, 2012, in the Court of Common Pleas of Philadelphia County following his convictions of driving under the influence, homicide by vehicle while driving under the influence, and homicide by vehicle. Following careful review, we affirm.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the facts of the instant case are as follows. On May 8, 2010, at approximately 11:20 p.m., Sharon Heuston ("Heuston") was driving her black Buick southbound on 61st Street in Philadelphia, approaching the intersection with Passyunk Avenue. Appellant, who was high on PCP and marijuana, drove his teal Saturn into the rear end of Heuston's Buick at a speed of approximately 60 miles an hour. This collision caused Heuston's

car to project into the intersection where it hit the right passenger side of a green Kia Optima driven by Christi Migone ("Migone"), which was traveling westbound on Passyunk Avenue through a green light. As a result of the high-speed impact of appellant's car, Heuston was ejected from her vehicle, struck the windshield of the Kia, and then landed on the roadway underneath her own vehicle, which had turned on its side.

Police Officers Eric Kornberg and Joseph Shorten immediately responded to the radio call. Officer Kornberg stated the conditions were cold and clear that day. (Notes of testimony, 5/8/12 at 84.) Upon arrival, they saw a black Buick on its side and a green Kia in the middle of the intersection. A teal Saturn was on its side. (*Id.* at 85.) Officer Kornberg found the victim trapped and unresponsive. (*Id.* at 70-73, 85-88, 94.) Officer Kornberg, Officer Shorten, and approximately 10 to 20 civilians pushed the car off the victim's body and used a support bar to prevent the vehicle from falling back onto the ground. The victim had suffered multiple blunt force injuries and internal bleeding; she was pronounced dead at 11:30 p.m. (*Id.* at 56.)

Officer Kornberg also heard Migone call for help. (*Id.* at 87.) Migone was unable to exit her vehicle as her face was covered with glass. Medical personnel and two officers took her out of the vehicle, and she was transported to the University of Pennsylvania Hospital. (*Id.* at 88.) Migone

sustained serious non-life-threatening injuries, as did appellant, who was trapped in his vehicle.

Migone testified at trial that while driving her Kia westbound on Passyunk, she saw that the traffic light was red. (*Id.* at 109.) As she approached the intersection, she "started pumping the break [sic] to slow down." (*Id.* at 110.) The light turned green and she "took [her] foot off the break [sic] and continued to go into the intersection" when she was suddenly hit on the right passenger side and lost control of the car. (*Id.* at 110-111.) Migone testified she had not been drinking and was in control of her motor skills; she did not remember anything else about the accident. (*Id.* at 107, 111.)

Lisa Taylor and Wanda Smith were both traveling in a minivan on Passyunk Avenue at the time of the accident. Taylor testified that she saw a black Buick enter the intersection at a high rate of speed. (*Id.* at 64-67.) Taylor stated the Buick was "out of control" and struck a Kia in the intersection; the Kia had been in front of Taylor's vehicle. (*Id.* at 69-70.) After the crash, she noticed appellant's Saturn in the intersection as well. (*Id.* at 70.) On cross-examination, Taylor acknowledged that in her signed statement to police, she stated she had seen the Buick making a left-hand turn onto Passyunk. (*Id.* at 77.) On re-direct, she explained, "seeing the Buick come out into the intersection, it happened so fast because you couldn't see exactly what car hit whom. But it seemed as though the Buick

hit the Kia, and then the Kia hit the Saturn." (**Id.** at 79.) Smith provided a statement to the police, which was similar to Taylor's. At trial, Taylor also acknowledged that she did not look at the intersection until after she heard the crash and "really couldn't say" what happened. (Notes of testimony, 5/9/12 at 21, 26, 32.)

Officer Paul Busch, an expert in the field of accident reconstruction, testified that he had reviewed the eyewitnesses' statements to the police and determined that the damage to the vehicles was inconsistent with their accounts. The trial court summarized testimony of Officer Busch as follows:

> Police Officer Busch, along with Police Officers Sienkiewicz and Phillips investigated the crash site. Officer Phillips took statements from witnesses at the scene. Officer Busch took photos and measurements, conducted vehicle examinations, and evaluated the road surface. His investigation included scene evaluation, vehicle examination, physical evidence, injury documentation, statements of principals, statements of witnesses, and other information and results and conclusions. During his investigation, Officer Busch observed that the traffic lights were cycling properly. . . .
>
> After his investigation, Officer Busch placed his findings and conclusions in a ten-step report. In arriving at his conclusions, Officer Busch conducted damage analysis, an acceptable method in his field. In reviewing the damage, Officer Busch concluded to a reasonable degree of scientific certainty that the collision between defendant's vehicle and Ms. Heuston's vehicle was an off-center hit. As a result of this collision, defendant's vehicle had severe crush damage to the front end. The damage was angled more on the left than on the right. This indicated that the left side of defendant's vehicle first impacted the right side of Ms. Heuston's vehicle.

Additionally, the ripple effect on defendant's vehicle resulted from energy transferring through the frame and body components of defendant's vehicle. The intensity of the collision caused damage to the A-pillar and 13-pillar of defendant's vehicle. The bowing of the body panel on the right front side of defendant's vehicle also indicated that his vehicle had impacted the right side of Ms. Heuston's vehicle,

There was rust transfer in the center hood of defendant's vehicle. When Officer Busch examined Ms. Heuston's vehicle, he observed a significant amount of rust and rot throughout the underside. Officer Busch concluded to a reasonable degree of scientific certainty that the partial front end of defendant's vehicle rode underneath the partial right rear of Ms. Heuston's vehicle. As a result, defendant's vehicle caught rust debris as it went through the underside of Ms. Heuston's vehicle. Officer Busch also looked inside the interior of defendant's vehicle and observed that the steering column was hanging from the dashboard. This indicated that defendant crashed into the steering wheel. In addition to this damage, both air bags were deployed and some vehicle components were ajar.

When this first collision occurred, Ms. Heuston's vehicle sustained damage to both the front end and rear end. The vehicle was compacted to the point where the back seats were within close proximity to the steering wheel. . . . The majority of crush damage was on the right rear end of Ms. Heuston's vehicle. . . . The rear axle was pivoted to where it was back on the right side and forward on the left side, which was consistent with defendant's vehicle hitting the right rear of Ms. Heuston's vehicle. . . .

At the stop bar on 61st Street, there were red pieces of brake light on the ground. Ms. Heuston's vehicle was the only vehicle missing brake lights. A teal body panel piece, which belonged to defendant's vehicle, was also found at the stop bar.

Officer Busch concluded to a reasonable degree of scientific certainty that those pieces fell at the point where defendant's vehicle hit Ms. Heuston's vehicle. At that point, a gouge mark on the asphalt was also present. This occurred when both vehicles collided and dug into the highway. This was further evidence that the first collision between defendant's vehicle and Ms. Heuston's vehicle occurred at that location. Officer Busch concluded to a reasonable degree of scientific certainty that the front end of defendant's vehicle struck the right rear end of Ms. Heuston's vehicle when Ms. Heuston was stopping or had stopped at the stop bar on 61st Street.

After observing the damage to defendant's vehicle and Ms. Heuston's vehicle, Officer Busch examined Ms. Migone's vehicle, which had impact damage to the front right side. Officer Busch also observed damage on the windshield consistent with soft body contact. This contact occurred when Ms. Heuston was ejected from her vehicle. There was no damage to the rear end or left side of Ms. Migone's vehicle. . . . Officer Busch concluded to a reasonable degree of scientific certainty that the collision between defendant's vehicle and Ms. Heuston's vehicle caused Ms. Heuston's vehicle to project forward into the intersection where it impacted Ms. Migone's vehicle as it was traveling westbound on Passyunk Avenue. At trial, Officer Busch testified as an expert in accident reconstruction and confirmed that his conclusions regarding the first impact point and second impact

point were made to a reasonable degree of scientific certainty.[1]

After the investigation, defendant's car was seized and taken to the city fleet management yard. Carl Bender, an automotive technician, inspected defendant's vehicle and determined that the brakes, wheels and tires passed state inspection standards, Mr. Bender did not inspect the undercarriage of defendant's vehicle because it was not requested. At trial, he further noted that he would not have been able to conduct an examination of the undercarriage even if it was requested because the vehicle damage made it unsafe to do so.

Trial court opinion, 4/11/13 at 3-6.

During the investigation, an officer found a water bottle containing alcohol inside appellant's vehicle. At that time, appellant was in the hospital receiving surgical treatment for major leg trauma. After obtaining a search warrant, Officer Busch seized one urine specimen and one blood serum specimen from hospital personnel, who had obtained them from appellant. Officer Busch also received a toxicology laboratory report from the hospital. Based on this report, appellant was arrested.

---

[1] On cross-examination, Officer Busch acknowledged that his theory of the accident was inconsistent with the observations of the eyewitnesses. He considered their statements to the police but disagreed with them and believed the witnesses mistakenly identified the first impact was between the Heuston's Buick and Migone's Kia. The officer conceded that he did not apply principles of engineering or physics or mathematics to his analysis of the accident. Officer Busch also acknowledged that he had no occasion to observe the area of the street where the gouge mark was located to determine if it was pre-existing and did not observe the undercarriages of the Buick or Saturn to ascertain whether either car could have caused the mark. (*Id.* at 193-222.)

Dr. Richard Cohn testified as an expert in Forensic Toxicology and Pharmacology. He testified that appellant tested positive for marijuana and PCP and that his blood alcohol was within the legal limit. Dr. Cohn explained that among the various ways that PCP can be ingested, it could be sprinkled on marijuana or mixed with an organic fluid and marijuana. As the trial court summarized:

> Dr. Cohn stated that there was absolute scientific certainty that defendant was under the impaired effects of PCP and marijuana. By itself, the PCP level in defendant's blood rendered defendant impaired. Dr. Cohn explained that the ingestion of PCP has the following adverse effects: distortion to person, place and time, hallucinations, disorientation, dizziness, lightheadedness, inability to judge and perceive surroundings, as well as impairment of individual judgment and intellect. Additionally, the ingestion of marijuana had an aggravating effect. Dr. Cohn further explained that an individual's reflex coordination, ability to judge, ability to make safety-sensitive decisions, ability to provide for their welfare or the welfare of others is impaired under the levels of PCP and marijuana found in defendant's blood. As a result, defendant's impairment prevented him from judging the distance in front of him, putting his foot on the brake, or swerving away from a slowing or stopped vehicle. Dr. Cohn concluded to a reasonable degree of scientific certainty that the PCP and marijuana rendered defendant unfit to safely operate a motor vehicle on the highway. Consequently, the impairing levels of PCP and marijuana were directly and causally related to this fatal accident.

Trial court opinion, 4/11/13 at 8.

On May 8, 2012, a jury trial before the Honorable Sandy L.V. Byrd commenced. Appellant's theory of the case conceded that he was guilty of

driving under the influence of marijuana, but he claimed that he did not voluntarily ingest PCP. Rather, he testified the marijuana he smoked must have been laced with PCP unbeknownst to him. (Notes of testimony, 5/9/12 at 71.) Appellant denied feeling any of the side effects typically caused by PCP. (*Id.* at 80-83.)

Relying upon statements made by eyewitnesses to the police, Officer Shorten's account of his accident report, and defense counsel's cross-examination of the accident investigation expert, appellant presented a different theory of how the accident occurred. Officer Shorten testified about his investigation of the accident. He identified photographs of the intersection and roadways leading to it, which showed long straight approaches. He also testified the intersection was a "high accident" intersection at times, some of which resulted from drag racing. (*Id.* at 39, 52.)

Officer Shorten summarized a statement provided by Smith. Officer Shorten testified that Smith stated a Saturn and a black Buick were traveling on 61st Street. When the light changed, all vehicles accelerated through the light. (*Id.* at 43.) The 2002 Kia was traveling westbound on Passyunk Avenue, and all three vehicles made contact. (*Id.*) Smith observed the operator of the Buick was ejected from the vehicle. (*Id.*) On cross-examination, Officer Shorten acknowledged that he made a diagram of

the accident in which he miswrote the designation of the cars in the diagram. (*Id.* at 47.)

Appellant testified in his own defense and stated that while he was in the left-hand lane, Heuston passed his car on the right and then drove into his lane, in front of his car. (*Id.* at 101, 105.) He stated she traveled through the intersection at a high rate of speed in an apparent attempt to "take" a green or yellow light and turn left onto Passyunk Avenue. (*Id.* at 75.) Appellant, who was behind her and traveling at a speed of approximately 35 to 40 miles per hour, also tried to make the light. He claimed it was green as he approached and turned yellow just when he was in the intersection. (*Id.* at 96.) Appellant's theory was that Heuston's Buick struck Migone's Kia, which had proceeded through the intersection westbound on Passyunk Avenue, without having stopped to wait for the westbound light to turn green. Instead, she anticipated the light turning green; immediately after which, appellant's car struck the rear of Heuston's vehicle.

On May 11, 2012, appellant was convicted of the aforementioned crimes. On June 29, 2012, appellant was sentenced to 5 to 10 years on the charge of homicide by vehicle while driving under the influence and a concurrent term of 3½ to 7 years for the charge of homicide by vehicle; the charge of DUI merged for sentencing purposes. Appellant filed post-sentence motions on July 9, 2012, which were subsequently denied by

operation of law. (Docket #7.) This timely appeal followed. (Docket #8.) Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion. Herein, appellant argues that the verdicts were against the weight of the evidence, and he challenges the discretionary aspects of his sentence.[2]

Upon review of appellant's weight of the evidence claim, we note that we could find this challenge waived due to appellant's undeveloped argument. Appellant presents a boilerplate argument, summarily stating that the expert testimony of Officer Busch and Dr. Cohn was insufficiently reliable. (Appellant's brief at 17.) Appellant summarily refers us to two portions of the notes of testimony and the standard of review with no detailed analysis. In fact, appellant's summary of the argument section provides more detail and analysis than the argument section of his brief. (**See id.** at 15.) We could hold his failure to provide any developed argument or legal citation results in waiver of this issue. **Commonwealth v. McMullen**, 745 A.2d 683, 689 (Pa.Super. 2000) (Superior Court would not address issue where appellant provided no developed arguments or citations to relevant case law in support of it); **Commonwealth v. Miller**, 721 A.2d 1121, 1124 (Pa.Super. 1998) (appellant's claim waived where he

---

[2] Additional issues contained in his Rule 1925(b) statement have not been presented by appellant to our court in his brief; hence, we deem them to have been abandoned.

failed to reference facts of the particular case or cite to the record itself in any meaningful way); ***Commonwealth v. Long***, 532 A.2d 853, 857 (Pa.Super. 1987), ***appeal denied***, 541 A.2d 744 (Pa. 1998) (court will not review issues that are not properly developed by citation to the record and reference to supporting case law). ***See also*** Pa.R.A.P. 2119(a) ("The argument shall be . . . followed by such discussion and citations of authorities as are deemed pertinent").

Nevertheless, we have reviewed appellant's claim and find it meritless. Our standard of review is as follows.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice,

> personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis omitted) (citations omitted).

Appellant challenges the competency of Dr. Cohn and claims his testimony is unreliable. Appellant also challenges the testimony of Officer Busch, arguing that he is "poorly educated and remarkably inadequately trained."[3] (Appellant's brief at 15.) Appellant's very brief argument maintains that the testimony of the two eyewitnesses established that the driver of the Buick entered the intersection at a high rate of speed and struck the Kia, which caused appellant to unavoidably strike the rear of the Buick. (*Id.*)

We find that the trial court did not abuse its discretion in finding that the verdict was not against the weight of the evidence. Notably, appellant exercised his ability to challenge the credibility and probative value of these expert witnesses' testimony by making these very points during the *voir dire* and cross-examination. The jury obviously chose to credit the

---

[3] We note that appellant did not object when Officer Busch was qualified as an expert. (*See* notes of testimony, 5/8/12 at 128.) To the extent that he suggests that Officer Busch was not qualified to testify as an expert, this claim is waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be reviewed for the first time on appeal.").

testimony of the Commonwealth's experts despite the defense's attacks of their testimony.

The jury was entitled to find the testimony of the Commonwealth's expert to be credible. Again, Officer Busch testified that his conclusion was based on the damage sustained by the three vehicles involved as well as the debris at the scene. Specifically, appellant's car had significant left front-end damage, where Heuston's car sustained the most damage to the right rear bumper, indicating that he crashed into her car from behind. Officer Busch also explained that the rust had transferred from Heuston's vehicle to the hood of appellant's Saturn due to the force of the impact which propelled appellant's car underneath Heuston's car. The officer also observed a gouge mark in the road surface and fallen pieces from both cars at that stop line on 61st Street indicating appellant's car struck the victim's car at that point. Officer Busch testified that he observed "soft body" contact damage to Migone's Kia, which was caused by Heuston's body hitting the windshield as she was propelled out of her vehicle when appellant crashed into her car.

Additionally, the two eyewitnesses who initially told the police that they observed the Buick make a left turn into the intersection testified differently at trial. Taylor testified that "it happened so fast because you couldn't exactly see what car hit who" and Smith acknowledged that she did not look at the intersection until after she heard the crash and "really couldn't say" what happened. (Notes of testimony, 5/8/12 at 32, 79.)

Given this evidence, the verdict is hardly shocking to the judicial conscience. Over the course of the trial, comprehensive evidence was introduced to the jury indicating appellant was guilty of the crimes charged and the weighing of the evidence against appellant's competing evidence was exclusively for the fact-finder. Thus, we reject appellant's claim that the verdict was against the weight of the evidence.

Appellant's next issue concerns the discretionary aspects of his sentence. Our standard of review in an appeal from the discretionary aspects of a sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

***Commonwealth v. McNabb***, 819 A.2d 54, 55 (Pa.Super. 2003). There is no absolute right to appeal the discretionary aspects of a sentence. ***Id.*** Rather, appellant must petition this court for allowance of appeal and demonstrate that a substantial question exists as to whether the sentence imposed is inappropriate under the Sentencing Code. 42 Pa.C.S.A. § 9781(b).

In order to satisfy the requirements of § 9781(b), Pennsylvania Rule of Appellate Procedure 2119(f) mandates that an appellant challenging the

discretionary aspects of his sentence set forth in his brief a concise statement of the reasons relied upon for allowance of appeal. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 5522 A.2d 17 (Pa. 1987). Before reaching the merits of an appellant's argument, we must review the appellant's Rule 2119(f) statement to determine whether he has presented a substantial question for our review. *Commonwealth v. Goggins*, 748 A.2d 721, 726 (Pa.Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). A Rule 2119(f) statement that simply "contains incantations of statutory provisions and pronouncements of conclusions of law" is inadequate. *See Commonwealth v. Bullock*, 868 A.2d 516, 529 (Pa.Super. 2005), *affirmed*, 913 A.2d 207 (Pa. 2006), *cert. denied*, 550 U.S. 941 (2007)

> Rather, only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process, will such a statement be deemed adequate to raise a substantial question so as to permit a grant of allowance of appeal of the discretionary aspects of the sentence.

*Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002).

Limiting our review to appellant's Rule 2119(f) statement, we conclude that appellant has failed to raise a substantial question. Nowhere in his 3½-page Rule 2119(f) statement does he explain what specific provision of the Sentencing Code or fundamental norm underlying the sentencing

process has been violated. This court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review. *Commonwealth v. Wellor*, 731 A.2d 152 (Pa.Super. 1999).

Rather, appellant makes a bald statement that his sentence was excessive and avers that the court's reasoning, "raises serious questions as to the court's judgment." (Appellant's brief at 19.) Appellant also characterized the court's judgment, in discounting the 37 letters written on appellant's behalf, as "backward." (*Id.*) Appellant concludes his statement by merely providing a quote from *Commonwealth v. Eby*, 784 A.2d 204 (Pa.Super. 2001), which discusses Section 9721(b) and then he summarily concludes that "the trial court failed in its obligations at sentencing." (*Id.* at 20.)

This vague and conclusory challenge is inadequate to allow for discretionary review. *Bullock*, *supra*. Appellant has not sufficiently articulated the manner in which his sentence purportedly violates either a specific provision of the Sentencing Code or a fundamental norm underlying the sentencing process. We could conclude appellant waived his claim regarding the discretionary aspects of his sentence because of a deficient Rule 2119(f) statement. *Commonwealth v. Gibbs*, 981 A.2d 274, 284-284 (Pa.Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010).

Even if we were to find appellant's statement represents the bare minimum of a Rule 2119(f) statement, we would determine that he is not entitled to relief. Essentially, appellant seems to suggest that the trial court did not state adequate reasons on the record as to why appellant's sentence was beyond the aggravated range of the guidelines. This claim would raise a substantial question. *McNabb*, *supra* at 55-56.

Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa.Super. 2002), *appeal denied*, 820 A.2d 703 (Pa. 2003).

The Sentencing Code sets forth the considerations a trial court must take into account when formulating a sentence:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). It also provides:

> In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences an offender following revocation of

> probation, county intermediate punishment or State intermediate punishment or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

*Id.* Furthermore, when sentencing a defendant beyond the ranges recommended by the sentencing guidelines, the trial court must state its reasons for departing from the guidelines on the record. ***Commonwealth v. Bowen***, 55 A.3d 1254, 1263-1264 (Pa.Super. 2012), ***appeal denied***, 64 A.3d 630 (Pa. 2013). When doing so,

> a trial judge . . . [must] demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific reasons which compelled [it] to deviate from the guideline range.

*Id.* at 1264 (emphasis added).

Instantly, the trial court was informed that the Sentencing Guideline Form in this case indicated that with a prior record score of zero and the offense gravity score of 10, the sentencing guideline range for homicide by vehicle while DUI, a felony in the second degree, was 22 to 36 months plus or minus 12. (Notes of testimony, 6/29/12 at 6-7.) Appellant was also subject to a three-year mandatory minimum for the offense pursuant to

75 Pa.C.S.A. § 3735(a). Appellant was sentenced to 5 to 10 years' incarceration for homicide by vehicle DUI. Appellant was also convicted of homicide by vehicle, a third degree felony; the guidelines for this offense were 9 to 16 months plus or minus 9. (*Id.*) Herein, appellant was sentenced to 3½ to 7 years' incarceration for this offense. Appellant was also convicted of DUI which merged with homicide by vehicle DUI. (*Id.*; *See Commonwealth v. Neupert*, 684 A.2d 627, 628 (Pa.Super. 1006). As appellant was sentenced beyond the guideline ranges, the trial court was required to state its reasons for deviating from the guidelines on the record.

In the instant case, the sentencing court had the benefit of a pre-sentencing report, a mental health report, and specifically noted that it reviewed a sentencing guideline analysis. (Notes of testimony, 6/29/12 at 5.) *See Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa.Super. 2010) (stating that where a sentencing court is informed by a PSI report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed."). The court commended appellant for his efforts to be a productive citizen, his childhood experiences, and his need for rehabilitation; however, it also reflected that it needed to take into account the protection of the public. (Notes of testimony, 6/29/12 at 28.) The court emphasized how serious it is to drive under the influence. (*Id.* at 29-30.) The trial judge further took note of the extreme harm done by appellant as

one of the victims was killed. The court also heard of the serious injuries sustained by Migone and the permanent nerve damage she faced as a result of the crash. (***Id.*** at 22-23.)

Additionally, the court considered the victim impact letter from Heuston's life partner. (***Id.*** at 18-20.) Moreover, attached to the sentencing memorandum was a report that less than two weeks before the accident, appellant had been stopped for a suspected DUI and was specifically warned about the dangers of driving under the influence. (***Id.*** at 17.) Thus, the court concluded that the mitigating evidence did not justify the imposition of a lesser sentence. We cannot find the trial court abused its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014