J-A05043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.B. | : | |
| | : | No. 605 WDA 2018 |

Appeal from the Dispositional Order November 14, 2017
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-JV-0000123-2016

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED FEBRUARY 11, 2019**

M.B. (Appellant) appeals from the Juvenile Court's dispositional order entered after it adjudicated Appellant delinquent of attempted rape, attempted sexual assault, indecent assault, terroristic threats, indecent exposure, simple assault, and open lewdness.[1] We affirm.

The adjudication hearing occurred on November 1, 2017. H.F. (Victim) testified to meeting Appellant when she moved into his neighborhood. N.T., 11/1/17, at 14. She stated that she and Appellant were "just friends." *Id.* at 44. On November 6, 2016, the Victim was 15 years old and Appellant was 14 years old. The Victim was riding her bicycle past Appellant's home during the early evening when she saw Appellant standing outside. The Victim testified that she "stopped and wanted to talk to" Appellant. *Id.* at 17. The Victim

_____

[1] 18 Pa.C.S.A. §§ 901/3121(a), 901/3124.1, 3126, 2706(a), 3127(a), 2701(a), and 5901, respectively.

stated that she was talking to Appellant when he "pulled" her from her bicycle onto the ground, and "tried choking" her. *Id.* at 18-20. She explained:

> I got him off of me at one point, and then he went back onto me and he started choking me. And I tried to scream for help, and I kept on yelling. He covered my mouth, told me to shut up or he would kill me. . . . I kept on trying to move my head away from [Appellant's hand] at first, until [] like the third or fourth time that he was covering my mouth from me screaming, that I bit him down on his hand. I know I took a chunk out.

*Id.* at 21-22. The Victim testified that her throat "hurt" when Appellant choked her. *Id.* at 22. She also relayed that Appellant "told me to shut up or he'll kill me. Or if I tell anyone, he would kill me." *Id.* at 23. The Victim further stated that after pulling down her pants and his own, Appellant:

> was trying to hump me. And I crossed my legs over each other, and I kept on trying to make sure he couldn't get it into me or anything. And he got on top of me, and I kept on making sure that he couldn't. And he finished like humping me, and he sat there and got up, pulled up his – he sat there and started putting his [penis] away and then like zipping up his pants, buttoning it and fixing his belt and then he ran off.

*Id.* at 25.

The Victim clarified that Appellant's penis touched her skin, "that was it." *Id.* at 26. The Victim then fled home on her bicycle and once she was inside her home, "started yelling, [Appellant] just raped me and I don't know what to do, because I was just like lost." *Id.* at 28. The Victim's family immediately called the police.

In addition to the Victim, Commonwealth witnesses included the Victim's mother, the Intake Supervisor at Crawford County Human Services, a

Pennsylvania State Police (PSP) scientist (accepted as an expert in the field of forensics and specializing in serology), another PSP scientist (accepted as an expert in the field of forensic DNA), PSP Troopers John Michalak and Zakary Kosko, and PSP Detective Todd Giliberto. *See* Juvenile Court Opinion, 5/29/18, at 3. Exhibits introduced by the Commonwealth, and admitted without objection, included police photographs of the Victim taken on the day of the incident, her pink underwear, buccal swabs from the Victim and Appellant, and a serology report. *Id.*

Appellant testified on his own behalf. He described the November 6, 2016 encounter with the Victim:

> I stopped to think about what was going on for a minute, since I do think stuff over thoroughly and slower than most people, being I'm autistic. And then I proceeded to step back a couple feet, zip up my pants, and told her this can't happen. She needed to go home, and I would be letting my parents know about it.

N.T., 11/1/17, at 140.

Appellant's mother and father also testified on his behalf, corroborating Appellant's version of events. Also, family cellphone photographs taken the day and week following the incident were admitted as defense exhibits. *See* Juvenile Court Opinion, 5/29/18, at 3. The Juvenile Court accurately recounted:

> Defense counsel, in her opening and closing statements, contended that the sexual encounter that occurred on November 6, 2016, had been consensual. There was no evidence supporting that contention. On the contrary, [Appellant] maintained (unconvincingly) that the Victim had sexually assaulted him, as

she had done on a previous occasion. According to him, there was no attempt at sexual intercourse. Notably, he first provided this version of events only shortly before the hearing, previously telling his parents nothing had happened. [Appellant] explained that the cut on his hand was from cutting out a pebble lodged there when he crashed his bicycle later in the day.

*Id.* at 5 (citations to notes of testimony omitted).

On this record, the Juvenile Court adjudicated Appellant delinquent of the aforementioned offenses, noting that it had "listened very carefully to the evidence" and taken notes. N.T., 11/1/17, at 243. The Juvenile Court stated that Appellant's testimony "strains the imagination beyond any possible credibility," while, conversely, the court found that the Victim "was very credible." *Id.* at 245. The Juvenile Court deferred disposition to November 14, 2017, when it ordered that Appellant be placed in a secure sex offender treatment program.

On November 27, 2017, Appellant filed a timely post-dispositional motion challenging the sufficiency and weight of the evidence.[2] The Juvenile Court scheduled a hearing for February 5, 2018. Appellant's counsel requested a continuance and the hearing was rescheduled for April 27, 2018. However, on March 28, 2018, Appellant's counsel presented a motion to cancel the hearing because counsel did "not anticipate the Court reversing its finding of delinquency." Counsel expressly requested that "the Court enter an appropriate Order so the juvenile may proceed with his Direct Appeal." The

---

[2] The motion was timely because the Clerk of Courts was closed from November 23-26, 2017 for the Thanksgiving holiday and weekend. ***See*** Juvenile Court Opinion, 5/29/18, at 2 n.2.

Juvenile Court granted the motion, with the added handwritten notation that "the Juvenile may file a timely Notice of Appeal . . ." Order, 3/29/18. Appellant filed this timely appeal, after which the Juvenile Court and Appellant complied with Pennsylvania Rule of Appellate Procedure 1925. Appellant presents two issues for our review:

    1.)     WHETHER THERE WAS SUFFICIENT EVIDENCE PRESENTED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED THE CRIMES OF ATTEMPTED RAPE, ATTEMPTED SEXUAL ASSAULT, INDECENT ASSAULT, TERRORISTIC THREATS, INDECENT EXPOSURE, SIMPLE ASSAULT, AND OPEN LEWDNESS AS REQUIRED TO SUSTAIN THE ALLEGATION OF DELINQUENCY?

    2.)     WAS THE COURT'S FINDING APPELLANT DELINQUENT FOR THE CRIMES OF ATTEMPTED RAPE, ATTEMPTED SEXUAL ASSAULT, INDECENT ASSAULT, TERRORISTIC THREATS, INDECENT EXPOSURE, SIMPLE ASSAULT AND OPEN LEWDNESS AGAINST THE WEIGHT OF THE EVIDENCE?

Appellant's Brief at 6.

**Sufficiency of the Evidence**

We note at the outset:

When examining a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented

sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348–349 (Pa.Super.2013) (quoting *In re A.V.*, 48 A.3d 1251, 1252–1253 (Pa.Super.2012)). The finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa.Super.2010).

*In Interest of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016).

Instantly, Appellant recognizes that "it is necessary to examine the elements of each of the crimes of which Appellant was adjudicated." Appellant's Brief at 17. With regard to attempted rape and sexual assault:

A person commits an attempt when, with intent to commit a specific crime, he does **any act which constitutes a substantial step toward the commission of that crime**.

18 Pa.C.S.A. § 901 (emphasis added).

Appellant argues that "the Commonwealth did not establish that Appellant committed an act which constitutes a 'substantial step toward the commission' of Rape or Sexual Assault." Appellant's Brief at 18. He maintains that because "the record in the instant case is devoid of any evidence of

- 6 -

penetration . . . however slight" the sexual intercourse element for both the charges of Attempted Rape and Attempted Sexual Intercourse have not been met." *Id.* at 18-19. This argument does not make sense. First, Appellant was convicted of attempted rape and attempted sexual **assault**, not "attempted sexual intercourse." *See id.* at 19. Rape occurs when "the person engages in sexual intercourse with a complainant . . . [b]y forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1). Sexual assault occurs when the person "engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. As noted above, the Victim testified that Appellant pulled her off of her bicycle, forced her onto the ground, pulled down the Victim's pants as well as his own, "humped" the Victim and touched his penis to her skin. Thus, the record supports a finding that Appellant took a "substantial step" – in this case multiple steps – to commit rape and sexual assault.

Appellant also contends that with regard to indecent assault, "there is no evidence of record that Appellant touched the sexual or other intimate part" of the Victim. Appellant's Brief at 19. "A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid . . . for the purpose of arousing sexual desire in the person or the complainant and: (1) the person does so without the complainant's consent; (2) the person does so by forcible

compulsion." 18 Pa.C.S.A. § 3126. In addition to the evidence cited above, the Commonwealth presented the testimony of Allison Miller. The Juvenile Court accepted Ms. Miller, without objection from Appellant, as an expert in DNA forensic science. N.T., 11/1/17, at 87. Ms. Miller testified to testing the underpants worn by the Victim at the time of the incident, and matching Appellant's DNA to the sperm recovered from "the crotch panel of the underpants." *Id.* at 95; Commonwealth Exhibit 8. The evidence was thus sufficient to support a finding that Appellant "caused the complainant to have indecent contact with the person or intentionally cause[d] the complainant to come into contact with seminal fluid." Appellant's argument with regard to indecent assault is meritless.

Next, Appellant assails the sufficiency of the evidence supporting his indecent exposure adjudication. "A person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm." 18 Pa.C.S.A. § 3127. Appellant's entire argument is that the Commonwealth "did not present evidence which established beyond a reasonable doubt that Appellant knew that the conduct alleged by [the Victim] was likely to offend, affront, or alarm [the Victim]." Appellant's Brief at 20. Because it is simply conclusory and undeveloped, Appellant's argument is waived. ***See***

***Commonwealth v. McMullen****,* 745 A.2d 683 (Pa. Super. 2000) (holding that blanket assertions of error are insufficient to permit meaningful review).

Appellant also claims that the Commonwealth failed to prove that he committed simple assault, suggesting that despite the Victim's mother and the State Trooper testifying to observing scratches on the Victim's body and red marks on her neck, the Victim stated that being choked "hurt, but it didn't hurt like a lot," N.T., 11/1/17, at 2, such that the "testimony does not meet the requirement that a bodily injury was caused." Appellant's Brief at 20. The section of the simple assault statute under which Appellant was adjudicated reads:

a person is guilty of assault if he:

(1) **attempts** to cause **or** intentionally, knowingly or recklessly causes bodily injury to another;

18 Pa.C.S.A. § 2701 (emphasis added). In addition to discounting that choking, scratching and red marks may constitute bodily injury, Appellant disregards the attempt component of the statute. Thus, the evidence of Appellant's actions, as credited by the Juvenile Court, support his adjudication of simple assault.

With respect to his adjudication for open lewdness, defined as "any lewd act which [a person] knows is likely to be observed by others who would be affronted or alarmed," 18 Pa.C.S.A. § 5901, Appellant again makes an undeveloped, one-sentence, conclusory argument that "the Commonwealth did not present evidence beyond a reasonable doubt Appellant knew that the

acts alleged by [the Victim] were likely to affront or alarm her." Appellant's Brief at 21. Therefore, the claim is waived. ***McMullen***, ***supra***.

Finally, Appellant "concedes" that the Commonwealth established the elements of terroristic threats of which he was adjudicated. ***See*** Appellant's Brief at 21. Accordingly, in sum, we find no merit to Appellant's sufficiency claims.

**Weight of the Evidence**

In his second issue and four total pages of argument, Appellant does not individually challenge the weight of the evidence as to his adjudication of separate offenses; rather, Appellant states holistically that the Juvenile Court's delinquency finding "for the crimes of Attempted Rape, Attempted Sexual Assault, Indecent Assault, Terroristic Threats, Indecent Exposure, Simple Assault, and Open Lewdness was against the weight of the evidence presented." ***Id.*** Appellant does not cite any case law, and in the body of his weight argument simply recites the hearing testimony and maintains that "the lower court failed to give appropriate weight to the evidence presented by Appellant." ***Id.***

We note that although Appellant raised the weight issue in his post-dispositional motion, he later withdrew that motion, and the Juvenile Court never ruled on the weight claim. ***See*** Pa.R.J.C.P. 620 (providing for post-dispositional motions in juvenile delinquency matters). Thereafter, Appellant filed his appeal and his Rule 1925(b) concise statement, but did not include a

weight claim in the statement. We thus find that Appellant's weight claim is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (issues not raised in the concise statement are waived); *compare with Interest of J.G.*, 145 A.3d 1179 (Pa. Super. 2016) (declining to waive weight challenge where juvenile did not file post-dispositional motion but presented weight of evidence claim for first time in Rule 1925(b) statement).

Although Appellant failed to preserve his weight claim, we nonetheless recognize:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. Thus, we may reverse the juvenile court's adjudication of delinquency only if it is so contrary to the evidence as to shock one's sense of justice.

*In re A.G.C.*, 142 A.3d 102, 109 (Pa. Super. 2016) (citations omitted). It is well-settled that the hearing judge sits as the finder of fact, and the weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder. *In re R.D.*, 44 A.3d 657, 664 (Pa. Super. 2012) (citation omitted). Instantly, the Juvenile Court expressly and repeatedly found the Victim's testimony "to be very credible," *see*, *e.g.*, N.T., 11/1/17, at 245, and our review of the record reveals nothing that would shock one's sense of justice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/11/2019</u>